UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
MR.MARTIN CASTLES,CLERK
595 MAIN STREET
WORCESTER MASS.01608

FILED
IN CLERKS OFFICE

2006 OCT 10 P 12: 40

U.S. DISTRICT

MR.JOSE LUIS CABRERA
N.C.C.I.GARDNER
P.O.BOX 466
500 COLONY RD.
GARDNER MASS.01440 ˙

IN RE:CABRERA V.O;BRIEN
      U.S.NO.4;05-CV-40087-FDS


Dear Mr.Castles;

        Please find enclosed for filing ,"Petitioner petition
to include only exhausted claims,"Which the petitioner Motion to
amend was allowed on September 20/2006,by F.Dennis Saylor IV,
See EXH-A attached. For filing as stated in the following...

1)CERTIFICATE OF SERVICE

2)AMENDED PETITION ,PURSUANT TO 28 U.S.C.A.2254-2255,PETITION
TO ONLY INCLUDE EXHAUSTED CLAIMS AS ORDERED BY THE COURT
ON SEPTEMBER 20/2006,BY F.DENNIS SAYLOR IV.

3)PETITIONER EXHIBIT'S IN SUPPORT OF HIS AMENDED PETITION
PURSUANT TO 28 U.S.C.A.2254-2255:

4)COVER LETTER TO RESPONDENT ATTORNEY AND CERTIFICATE OF
SERVICE.

        I beleive I have following all the instruction under
the order Memorandum of F.Dennis Saylor IV on September 20/2006.
I appreciate any and all help in this matter,to process the amended
petition,and further thank you for your time.

                              RESPECTFULLY SUBMITTED
OCTOBER.  6    2006     PRO-SE  Jose L Cabrera (
                              MR.JOSE LUIS CABRERA
                              N.C.C.I.GARDNER
                              P.O.BOX 466
                              500 COLONY RD.
                              GARDNER MASS.01440


FDS
U.S.NO.4;05-CV-40087

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

U.S.DISTRICT COURT                    U.S.NO.4;05-CV-40087-FDS

_____

JOSE LUIS CABRERA
(PETITIONER)

    V.

STEVEN O'BRIEN
(RESPONDENT)

_____


### CERTIFICATE OF SERVICE

        I Jose Luis Cabrera certify that I have served upon the
clerk of the United States district court,to Mr.Martin Castles
595 Main Street,Worcester Mass.01608,sent by first class mail
postage prepaid by the petitioner,"Petitioner amended petition
pursuant to 28 U.S.C.A.2254-2255,and exhibit in support,sent on
this  6    day of  October  2006 :Signed under the pains and
penalties of perjury;


                    RESPECTFULLY SUBMITTED
          PRO-SE   Jose L cabrera
                    MR.JOSE LUIS CABRERA
                    N.C.C.I.GARDNER
                    P.O.BOX 466
                    500 COLONY RD.
                    GARDNER MASS.01440

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

U.S.DISTRICT COURT                    U.S.NO.4;05-CV-40087-FDS

---

JOSE LUIS CABRERA
(PETITIONER)

    V.

STEVEN O'BRIEN
(RESPONDENT)

---

PETITIONER AMENDED WRIT OF
HABEAS CORPUS UNLAWFUL RESTRAINT,PURSUANT TO
28 U.S.C.A.2254-2255,AS ORDER AMENDED ALLOWED
ON SEPTEMBER 20/2006:BY F.DENNIS SAYLOR IV
EXHIBIT-A).

---

    Now comes the pro-se state prisoner as petitioner in the
above entitled matter,pursuant to the Memorandum order set forth
on September 20/2006,by United States district court Judge F.Dennis
Saylor IV,Granting the petitioner's "Motion to amend his petition
28 U.S.C.A.2254-2255,to include only exhausted claims(Docket no.13)
See EXH-A)Memorandum order; As stated in D)Summary  by justice F.Dennis
Saylor Memorandum order,"What remains is one of the claims in ground
one........

        "1)The claim that the supplemental instruction
          improperly shifted the burden of proof)". SEE EXH-A).

        "2)The claims in ground two)".SEE EXH-A).

        "3)The claim in ground three,the claim of
          ineffective assistance of counsel,based
          on the failure to object to the supplemental
          instruction on malice)".SEE EXH-A).

4

        The pro-se petitioner Jose Luis Cabrera is still being held as a state prisoner incarcerated under conviction of Massachusetts General law indictment of Essex County no.#1999-01557 code offense murder G.L.c.265§1,Guilty verdict(lesser offense of murder in the second degree.G.L.c.265§2,and currently in the care and custody of the Massachusett Department of Correction a state prison ,at N.C.C.I.Gardner,500 Colony Rd.Gardner Mass.01440.

        The respondent is Steven O'brien superintendent of N.C.C.I.Gardner state prison ,at 500 Colony Rd.Gardner Mass.01440.

        The pro-se petitioner Jose Luis Cabrera present his amended petition,pursuant to 28 U.S.C.A.2254-2255 for Writ of Habeas Corpus unlawful restraint,based on violation of the Federal Constitution 6th and 14th  Amendment of the United States Constitution and his life sentence must be vacated or set aside 28 U.S.C.A.2255.

PRIOR PROCEEDING INDICTMENT WHEN THE GRAND JURY WAS SITTING:

        Because the petitioner motion to amended his petition was allowed,the statement of the case will be the same as the original filing,and transcripts and citing is the same..The court should also note that statement of facts as cited in the original is still the same and citing of transcripts of the trial.

**STATEMENT OF THE CASE:**

        On July 28/1999,an indictment was returned charging Jose Luis Cabrera with the murder of Nelson Liriano nine years after the death [C.A.6.  8].The defendant plead not guilty on August 10/ 1999.C.A. 6].See note A/.

(2)

The defendant's motion to suppress statements was heard on October 11-12/2000,and was denied[C.A.2].

Trial commenced on February 5/2001,in Newburyport, justice Welch presiding[C.A.5].

On February 12/2001 ,the defendant's motion for required finding of not guilty at the close of the Commonwealth's case was denied[C.A.3-4,10].

The defendant's motion for require finding of not guilty at the close of all evidence was denied on February 14/2001. [C.A.4,10].

On February 15/2001,the defendant was convicted of murder in the second degree and was sentenced to M.C.I.Cedar Junction for life[C.A.,412].

A notice of appeal was filed February 26/2001[C.A.4,13].

Appeal was denied on March 3/2005Commonwealth V.Cabrera A.C.NO.03-P-24,judgement affirmed denying motion to set aside verdict affirm[C.A.14].

Application for further appellate review denied on April 27/2005,FAR no.14723[C.A.15]. Without an opinion 444 Mass.1101 (2005).

Within the one years time limitation (ALSOFAR)petitioner filed a timely 28 U.S.C.A.2254-2255,.U.S.no.05-CV-40087-FDS.

Respondent filed a motion to dismiss,based on failure of the petitioner to exhaust state remedies,which was denied on September 20/2006,By F.Dennis Saylor J.[EXH-A).

Petitioner's Motion to amend his petition to include only exhausted claims Docket no.13)is granted.See EXH-A).to Oct.31/2006: Note/A.C.presents  last name of petitioner Cabrera(C)A.represents appendix exhibit's in support number is the page number's of documents of exhibit cited.Tr     )represents trial transcripts volume and pages cited (Tr.     vol.     page         ). EXH-A ATTACHED ADDENDUM.

## STATEMENT OF FACTS

### INTRODUCTION

An argument between two friends at a late night drinking party allegedly resulted, during a heated few minutes, in the tragic death of Nelson Liriano. Jose Luis Cabrera was convicted of second degree murder in connection with that death.

The prosecution's key civilian witnesses against Cabrera were the party's host, a regular proprietor of an illegal "after hours" business (Maria Rivera), her aunt (Leonarda Pasuy), the live-in boyfriend (Victor Mercado) of victim Liriano's former girlfriend, and a business associate of Mercado (Victor Reyes) who was not at the party. None of these witnesses initially volunteered information to the police or other investigators, and those who were at Maria's party all fled the scene. [Tr. 2/248-249; 3/40-43; 4/236-38; 5/43, 162-163, 226-227]. Nearly ten years later, these same individuals testified as eyewitnesses to verbal and physical altercations between the deceased, Nelson Liriano, and the accused, Jose Luis Cabrera. Several witnesses' 1999 trial testimony included statements which were either absent from or inconsistent with their signed 1990 statements. [Tr. 2/253-262, 276,

(4)

282-83; 3/14-15, 17-27, 49, 63, 96; 5/32, 34, 79-80, 102]. It was based upon this collection of disparate stories that Jose Luis Cabrera was convicted of second degree murder. [Tr. 8/16].

## FACTS

In the early hours of May 11, 1990, Nelson Liriano died after being stabbed during a late night party in Lynn, Massachusetts, which was hosted by Maria Rivera.[1]  Rivera ran an "after hours" business[2] from the apartment where she and her three young children lived. [Tr. 2/2/173-174, 205; 5/165, 174]. Rivera claimed that the party that she held on May 11, 1991 was not related to her "after hours" business, and that no alcohol was sold at the private gathering. [Tr. 2/206, 288-290].[3]  The party began around 2:00 AM,

---

[1] Rivera testified in English although her primary language was Spanish. [Tr. 2/171]. At one point, she testified that she though the word, "inaccuracies," meant "better." [Tr. 3/77]. The prosecutor assisted Rivera in clearing up a five year old arrest warrant and assured her that she would not be held in custody. [Tr. 3/12-14].

[2] Rivera's "after hours" business earned her $200 to $300 a night selling beer to late-night club-goers who wanted to continue to party and socialize after the local night clubs had closed. [Tr. 2/205, 272]. Food, drinks, and drugs were often sold at these parties. [Tr. 6/36-37]. Rivera claimed not to know that such "after hours" parties were illegal. [Tr. 2/266].

[3] Notwithstanding, some attendees were unsure whether drinks were being sold [Tr. 4/253; 5/173], and others said there was a three dollar charge per drink, which

(5)

after the ECO and Casa Del Sol night clubs had closed for the evening. [Tr. 2/204; 6/40].

From the early evening of May 10, 1990, until about 2:00 AM on May 11, 1990, Cabrera, Liriano, and most of the prosecution's civilian witnesses were out drinking and dancing at the ECO and/or Casa Del Sol night clubs in Lynn, Massachusetts. [Tr. 2/203-4; 4/212, 214, 250-51; 5/10, 172; 6/40-41]. Cabrera had had five beers at the clubs. [Tr. 6/39, 44]. As these clubs closed, around 2:00 AM, these individuals and many other people made their way to Rivera's apartment for a party, where they continued to drink and dance. [Tr. 2/204, 207-210]. The police were called to Rivera's apartment shortly after 2:00 AM to shut down the party due to a neighbor's complaint that the party was too loud.[4]   [Tr. 4/150, 178]. Although the police

---

was paid directly to Rivera. [Tr. 6/50].

[4]  Rivera could not recall whether the police did anything during this "two-something" o'clock visit to her house and indicated that she may have lied to the police. [Tr. 2/211, 276-277, 280]. Rivera initially recalled that during a subsequent 3:00 AM visit by police, they entered her home and told everyone to go home. [Tr. 2/212]. Contrary to Rivera's testimony, no police cars were dispatched to Rivera's house between 2:10 AM and 4:46 AM that night. [Tr. 4/150]. According to police records, there were three visits by police, the first of which was in response to a call about a loud party, placed at 2:10 AM. [Tr. 4/150, 178]. Officers arrived at Rivera's at 2:14 AM, spoke to Rivera, told her to break up the party, and left at

ordered Rivera to get everyone to leave, the party continued. [Tr. 2/212; 6/47]. Cabrera had three beers there, for a total of eight beers that evening. He was buzzed and happy. [Tr. 6/48-49].

Sometime after 3:00 or 4:00 AM, Liriano began to argue with his friend, Cabrera, while sitting in Rivera's kitchen. [Tr. 2/221, 287; 4/221-223; 6/34, 42, 82]. Liriano's conversations with Cabrera had been friendly all evening,[5] but as Liriano drank hard liquor at Rivera's party,[6] he became very upset. [Tr. 6/42]. According to Cabrera, Liriano thought Cabrera had

---

2:33 AM. [Tr. 4/150]. The second call made by Victor Mercado regarding a stabbing, and was received by police at 4:46 AM. [Tr. 4/150, 236]. A police cruiser arrived at Rivera's at 4:49 AM, and finding no one at the residence and no evidence of a stabbing outside the apartment, left the premises at 5:05 AM [Tr. 4/151, 194]. The third call, from Mann, a civilian who had found Liriano's body while looking for cans [Tr. 4/153, 195], was logged as a fatal stabbing call and was taken by police at 5:50 AM [Tr. 4/150, 195]. A car arrived at Rivera's at 5:56 AM, and left the scene at 6:05 AM, after locating Liriano's body in a yard several houses from the party. [Tr. 4/153, 160].

[5] However, Liriano had confided to Mercado prior to arriving at Rivera's home that he was mad at Cabrera. [Tr. 5/9-12, 19-22].

[6] Rivera testified that Liriano was drunk and that Cabrera was not that drunk. [Tr. 2/217, 219-220]. Pasuy testified that Liriano was drunk and Cabrera was not drunk. [Tr. 5/185-186]. Mercado confirmed that Liriano was drinking liquor at the party and was drunk prior to the party. [Tr. 4/251; 5/15-16, 50]. The coroner determined a blood alcohol level of .08 [Tr. 4/104]. According to Cabrera's testimony, no one could stand Liriano when he was drunk. [Tr. 7/23].

introduced Liriano's wife, Brenda Beal, to Victor Mercado, a rival suitor and an acquaintance of Cabrera.[7] [Tr. 6/42, 43, 53-55; 7/27]. Beal was romantically involved with Mercado, and lived with him on May 11, 1990.[8] [Tr. 4/213]. During this argument, Liriano called Cabrera a "cone mielda." [Tr. 2/254, 258; 3/14-15; 6/54].[9] Cabrera assured Liriano that he did not introduce Beal to Mercado. [Tr. 6/55].

Cabrera testified that he left the kitchen and walked away from Liriano into the living room at the front of the apartment in order to end the conversation. He sat down on the couch and began talking with Luis Ozuma. [Tr. 6/55-57].[10] Liriano came

---

[7] Other witnesses who claimed to have heard this initial argument stated that Liriano was upset because Cabrera owed him $1,600. [Tr. 4/222-223; 5/21, 144-145]. There was no testamentary or documentary evidence to show that Cabrera actually owed Liriano any money. [Tr. 7/28-29].

[8] Mercado boasted that he used to bring his friends over to "do her" (Beal). [Tr. 4/264] He went to Beal's apartment after the stabbing, even though Liriano had spent the previous two nights there. [Tr. 4/238, 262; 5/45].

[9] Rivera testified that, "cone mielda" is Spanish for "eat shit." [Tr. 2/227]. Both Rivera and Cabrera indicated that Liriano said "cone mielda" to Cabrera. [Tr. 3/15; 6/68]. Pasuy and Mercado did not recall hearing Liriano use this term. [Tr. 5/16, 183].

[10] Pasuy at points indicated that Liriano went first to the living room. [Tr. 5/146, 192]. However, she acknowledged her signed 1990 statement to police, indicated that in fact Cabrera was the first to enter the living room, and that Liriano followed Cabrera.

into the living room five minutes later, and said to Cabrera, "Mielda, why do you leave me hanging over in the kitchen?" [Tr. 6/57]. When Cabrera told Liriano that he didn't want any trouble, Liriano kicked Cabrera in the left leg and threw a drink in his face. [Tr. 6/58]. Victor Mercado was standing nearby at the time, and according to Cabrera's testimony, when Cabrera stood up,[11] Mercado grabbed him and threw him against a shelf with "bottles and pretty things" on it. [Tr. 2/271, 6/59]. Cabrera testified that Liriano pushed him against the shelf, which collapsed.[12] [Tr. 6/60]. Liriano then grabbed Cabrera by the throat and shirt, at which point Cabrera began to defend himself. [Tr. 6/61]. The two men then fell to the ground [Tr. 3/30-32; 5/148]. Cabrera testified that Liriano grabbed a piece of broken glass[13] from the floor as

_____

[Tr. 5/193].

[11] Cabrera was afraid of Liriano, and stood up so that Liriano would not hit him again. [Tr. 7/24]. At that time, Cabrera was "skinny and short," weighing around 125 pounds. [Tr. 7/24].

[12] There was conflicting testimony as to how broken glass got on the floor. Pasuy said that Cabrera threw a broken figurine at Liriano. [Tr. 5/149]. Mercado testified that Cabrera threw a bottle at Liriano which did not strike him. [Tr. 4/225-226; 5/54].

[13] Rivera testified that both men threw punches. [Tr. 2/229-230]. Witnesses also testified at trial, in 1999, that Liriano's hands were up during the altercation, but none of those witnesses mentioned this defensive

(9)

they both stood up, and Cabrera said again to Liriano
that he didn't want any problems. [Tr. 6/62]. Liriano
hit Cabrera, and Cabrera hit Liriano back. [Tr. 6/66].
Cabrera testified that Mercado and Ozuma had broken up
the fight. [14]   [Tr. 6/67; 7/7].

At this point, Cabrera testified that he went
into the kitchen, which was in the back of the
apartment, to get away from Liriano.[15]   [Tr. 6/66;

---

posture in their 1990 conversations with police. [Tr.
3/63, 93; 5/79-80, 5/102]. Additionally, Dr. Belliveau,
the coroner, testified that a wound on Liriano's arm
that he called a "defense" wound, "showed a double-
sharp edge," and he also confirmed that the kitchen
knife recovered after the altercation was *not* double-
edged. [Tr. 4/67, 118, 142]. Dr. Belliveau could *not*
draw a conclusion "as to whether Liriano was holding an
object in the hand of the arm that was not injured."
[Tr. 4/123]. Dr. Belliveau agreed that Liriano's injury
to his left arm could have occurred while Liriano threw
a punch and was struck by a sharp object. [Tr. 4/127].
Dr. Belliveau also said that the "superficial" cut
could have been caused by broken glass, and could
possibly have resulted from an offensive move by
Liriano. [Tr. 4/128]. Dr. Belliveau had not been told
by police that broken glass had been found at the
apartment. [Tr. 4/128].

[14] Pasuy testified that she was the only person to break
up the fight in the living room, specifically stating
that Rivera was not involved in stopping the fight [Tr.
5/150, 195-196]. Rivera, conversely, stated that she
too was involved in breaking up the fight. [Tr. 2/231,
233]. Mercado said that Pasuy, Rivera, and "[e]verybody
that was there tried to" break up the fight. [Tr.
4/227; 5/24, 27].

[15] Mercado testified that he saw Cabrera go into the
pantry [Tr. 4/229], and told police he saw Cabrera grab
the knife. [Tr. 5/32]. However, on cross examination,
Mercado admitted that he did not see Cabrera grab the
knife; he merely assumed it. [Tr. 5/34, 77-78]. Mercado
also mentioned that when he heard water running, he

7/51]. Several other witnesses admitted that Cabrera indeed was moving away from Liriano.[16]   [Tr. 3/23, 26; 5/25, 30].

Cabrera wanted to go out the back door, but the area was full of people. Cabrera heard someone yell that Liriano was coming after him and he became confused and panicked; his heart beating quickly. [Tr. 6/68, 70-71].

Liriano, with a piece of broken glass still in his left hand,[17] followed Cabrera into the kitchen,

---

assumed (but did not see) that Cabrera was washing off the knife. [Tr. 4/232].Mercado also admitted that he did not actually know what Cabrera did with the knife. [Tr. 4/233]. On cross-examination, Mercado admitted that he had falsely used his brother's name, Modesto, and had been charged in Springfield, Massachusetts using that name. He had been in default on that case. but someone in the district attorney's office did him a favor and the case — a drug distribution charge — was dropped. [Tr. 4/258-260, 5/6].

[16] Mercado testified that Cabrera moved away from Liriano. [Tr. 5/25]. Rather than staying in the living room or even retreating out the front door, Liriano instead went toward Cabrera in the kitchen. [Tr. 5/25]. Mercado testified that there was "no question" that Cabrera got away from Liriano, and that Liriano went toward Cabrera into the kitchen. [Tr. 4/230; 5/30]. Also, Rivera admitted that her testimony on direct examination was wrong when she said that Cabrera entered the dining room with a knife; and that it was actually Liriano who entered the kitchen and approached Cabrera at the refrigerator. [Tr. 2/243-244, 260; 3/22-23, 26]. She claimed that the stabbing occurred in the living room. [Tr. 3/96].

[17] Several witnesses, including Rivera and Mercado, testified that they did not see anything in Liriano's hands. [Tr. 2/242, 5/59].

(11)

where the two men struggled.[18]    [Tr. 5/25, 28, 57; 6/68-9]. Liriano swung at him and cut Cabrera's finger. As he fell backwards during the struggle, Cabrera grabbed a knife[19] from the kitchen table, and the two men struggled. [Tr. 6/69, 74, 78; 7/49-50]. Cabrera was cut on his stomach during the struggle, and Liriano also cut a finger on Cabrera's left hand. [Tr. 6/69, 77; 7/49-50]. Eventually, the two men ended up at the refrigerator, where, according to Cabrera's testimony, Juan "Sami" Mejia grabbed Liriano and took the glass from his hand, while Mercado grabbed Cabrera and took the knife.[20]    [Tr. 6/79, 81; 7/36-38]. After the two men were separated, Liriano argued for a few more seconds. [Tr. 7/36]. At that point, Cabrera felt

---

[18] Rivera testified that Liriano approached Cabrera at the refrigerator. [Tr. 3/22-26]. She further testified that Cabrera hit Liriano's chest and/or stabbed him several times, and that she did not see anything in Liriano's hands. [Tr. 2/242, 244; 3/87]. Mercado testified that Liriano was stabbed in the doorway of the kitchen, but somehow was able to continue into the kitchen and was stabbed at the refrigerator. [Tr. 5/36, 60]. Police found blood on the refrigerator door, on the kitchen floor nearby, and the rear hallway. [Tr. 5/104, 111-112].

[19] According to Cabrera, the knife on the kitchen table was being used to cut salami, which was part of the food being sold at the party. [Tr. 7/16-17, 19]. Other witnesses testified that soup was the only food served at the party. [Tr. 2/217-218; 5/143, 181-82]. Rivera claimed that the knife had been in the pantry. [2/237].

[20] Rivera testified that Cabrera put the knife in his pants. [Tr. 2/245].

nothing. He stated that he did not know that Liriano was hurt, and he never saw blood on Liriano. [Tr. 6/80-81; 7/40]. He never intended to hurt or kill Liriano. [Tr. 6/82].

Mejia grabbed Liriano and took him out the back door, with Mercado following close behind. [Tr. 2/246; 6/81]. According to Cabrera's testimony, Mercado had the knife[21] in his hand at this point,[22] and Liriano was looking back at Cabrera as he was being pushed out by Mejia. [Tr. 7/36-38].

Cabrera remained in the front of the house (living room) for about five (5) minutes. [Tr. 7/11].[23] The men at the party told Cabrera that Liriano was coming back, so Cabrera left. [Tr. 6/81]. At that

---

[21] Rivera identified a kitchen knife found in a neighbor's yard as belonging to her. [3/57-60; 5/85]. That knife was consistent (along with other types of sharp instruments) with the type of instrument that could have caused the wounds. [Tr. 4/119]. No identifiable fingerprints were recovered from this knife. [Tr. 5/87, 90-91]. The knife did not test positive for blood. [Tr. 5/115].
[22] Mercado never testified to having the knife in his possession.

[23] Rivera testified that Mercado returned five minutes after leaving and told her to call an ambulance. [Tr. 2/262.] According to the coroner, Dr. Belliveau, the stab wounds sustained by Liriano would only allow him to live "seconds or minutes" after he was fatally injured. [Tr. 4/80, 95, 137]. He testified that although Liriano might have been able to walk away from the incident site, he could not have traveled far. [Tr. 4/96-97].

(13)

point, Cabrera had not seen Liriano fall, nor had he seen him dead. [Tr. 7/9]. Cabrera's friend Pedro gave him a ride away from Rivera's apartment on May 11, 1990. [Tr. 7/7].

Shortly after the party, Cabrera moved to Waterbury, Connecticut,[24] and began using the alias of "Jose Antonio Gonzales." [Tr. 1/142]. He also used the alias, "Jose Vasquez." [Tr. 6/88]. Cabrera testified that he used an alias to avoid certain immigration issues which he believed could result in his being separated from his children.[25]   [Tr. 6/90,

---

[24] Cabrera was arrested on a warrant in Connecticut on June 22, 1998. [Tr. 1/131]. Victor Reyes claimed that Cabrera had admitted killing someone in Lynn – a statement Cabrera denied. Reyes claimed that he told Cabrera to leave. Reyes testified that he drove Cabrera less than 100 feet to a bus station, and that Reyes saw Cabrera purchase a ticket, which he assumed was for a trip from Lynn to New York City. [Tr. 3/105, 111, 132, 137, 6/93]. Reyes, an unemployed restaurant worker, was convicted on February 24, 1995 of possessing and distributing marijuana and contributing to the delinquency of a minor and was sentenced to two years, three months committed with the balance suspended. Reyes was also convicted on November 7, 1994 for possessing and dispensing marijuana and received a two-year sentence, three months committed with the balance suspended. Additionally, Reyes was convicted on October 31, 1989 for possession with the intent to distribute heroin, for which he received a two-year suspended sentence. Reyes has utilized the alias of Victor Jose Jimenez. [Tr. 3/101, 140, 146; 5/235].

[25] Cabrera is married and has four (4) children, each of whom he has always supported. [Tr. 6/31-33]. The immigration issues arose from a conspiracy and narcotics sale charge in 1990 and being in the country illegally. [Tr. 6/32-33, 86]. He also had a 1996 drug

(14)

92; 7/33]. At no time did Cabrera deny using such an alias.[26]  [Tr. 1/155, 6/103; 7/32].

## SUMMARY OF THE ARGUMENT

The supplemental instruction on malice was so erroneous that it permitted the jury to convict the defendant of murder without taking into account the mitigating factors that negated malice. It also permitted the jury to believe that excessive force in self-defense justified a murder verdict. Furthermore, it shifted the burden of proof to the jury to prove that the killing was not excused or justified, rather than on the prosecution to prove the absence of those factors. [Pp. 15-22].

The judge erred in denying the defendant's Motion For A Required Finding Of Not Guilty because there was insufficient evidence of malice to send the case to the jury. [Pp. 22-33].

Defense counsel's repeated failings deprived the defendant of a fair trial. These failings included

conviction and an escape charge. [Tr. 6/86-89].

[26] During police questioning which was the subject of an unsuccessful motion to suppress, Cabrera admitted that he knew many people named Nelson and tnas he did not kill Liriano, but he knew who did. [Tr. 1/161-162]. He also viewed a photograph that he said looked like him but the upper lip was bigger. [Tr. 1/160].

(15)

instant case did not. In the present case,where the mitigating

factors are such an integral component of distinguishing murder

from malice,the jury could have strictly adhered to the

supplemental instruction and convicted the defendant of murder

where the Commonwealth had not sufficiently proved the absence of

malice.Thus,it can not be said that the failure to incorporate the

factors that negated malice in the supplemental instruction did not

pose a substantial risk of a miscarriage of justice.

The conviction of the defendant based upon faulty

instructions violated due process and deprived him of his rights

under fifth and fourteenth Amendments to the Constitution of the

United States and Article XII of the Massachusetts Declaration

of rights.

I)                    PETITIONER CONTENDS THAT THE TRIAL
             JUDGE'S SUPPLEMENTAL INSTRUCTION ERRONEOUSLY
             SHIFTED THE BURDEN OF PROOF:

The supplemental jury instruction was defected because

it placed the burden of proof on the jury to prove the absence of

excuse or justification,rather than on the prosecution to disprove

the absence of malice. The burden at all times is on the Commonwealth

Francis V.Franklin 471 U.S.307 1985:Sandstrom V.Montana 442 U.S.

510 (1979):Mullaney V.Wilbur 421 U.S.648(1975):Connolly V.Commonwealth

377 Mass.527,533-534,387 N.E.2d,519 (1979).

> [T]he erroneous instruction ,even if it
> followed instruction which correctly stated
> the burden of proof,"could only have misled"
> the jury...[In]a case of murder in the
> second degree,where there was ...legitimate
> issue as to provocation,[there is doubt]
> that the error posed no substantial risk
> of a miscarriage of justice."

(16)

Commonwealth V.Carlino 429 Mass.at 694-695,710 N.E.2d,at 970,citing Commonwealth V.Acevedo 427 Mass.714,715-716,695 N.E.2d,1065 (1998).

In Green Supra 55 Mass.App.Ct.376,382,770 N.E.2d,995, 1000(2002). as in the present case,the jury was confused as to the difference between murder and manslaughter .The jury in <u>Green</u> specifically asked for "mitigating circumstances"whereas the jury in the instant case requested"the definition of malice for the voluntary manslaughter charge."[Tr. vol.8 page 10].Regardless of the wording of the request,the information sought was the same. The judge in <u>Green</u>  instructed the jury as to the mitigating factors whereas the judge in the instant case did not. In the present case,where the mitigating factors are such an integral component of distinguishing murder from malice,the jury could have strictly adhered to the supplemental instruction and convicted the defendant of murder where the Commonwealth had not sufficiently proved the absence of malice. Thus,it can not be said that the failure to incorporate the factors that negated malice in the supplemental instruction did not pose a substantial risk of a miscarriage of justice.

The conviction of the petitioner based upon faulty instruction violated due process and deprived his of a fair trial. Cabrera's conviction of murder violates his rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights.

**II. JOSE LUIS CABRERA'S MOTION FOR A REQUIRED FINDING OF NOT GUILTY SHOULD HAVE BEEN ALLOWED WHERE THE EVIDENCE DID DEMONSTRATE A SUFFICIENT INTENT TO SUPPORT A CONVICTION FOR MURDER**

(17)

A.   A Motion For A Required Finding Of Not
     Guilty Should Be Allowed Where The
     Facts And Reasonable Inferences Drawn
     Therefrom Do Not Support A Finding Of
     Guilty Beyond A Reasonable Doubt.

        The standard for evaluating a motion for a required

finding of not guilty is "whether,after viewing the evidence in

the light most favorable to the prosecution,any rational trier of

fact could have found the essential elements of the crime beyond

a reasonable doubt."Commonwealth V.Latimore 378 Mass.617,677,393

N.E.2d,370,374 (1979),quoting Jackson V.Virginia 443 U.S.307,318-

319 (1979)(emphasis in original ).In a case in which mitigating

circumstances negating malice were present,the issue was "whether

at the close of the Commonwealth's case there was sufficient evidence,

viewed in the light most favorable to the Commonwealth,for the jury

to conclude,beyond any reasonable doubtmthat the defendant acted

with malice."Commonwealth V.Ewing 30 Mass.App.Ct.285,287,567 N.E.

2d,1262,1264 (1991).In reviewing the denial of a motion for a

required finding of not guilty in a criminal case the court should

"consider whether'the evidence is insufficient as a matter of law

to sustain a conviction on the charge.'"Commonwealth V.Salemme 395

Mass.594,481 N.E.2d,471 (1985),quoting Mass.R.Crim.P.25(a),378 Mass

896(1979).The court should review only the evidence that was introduced

in the Commonwealth's case-in-chief.Commonwealth V.Campbell 375

Mass.308,311,376 N.E.2d,872,874 (1978).The motion for a required

finding of not guilty should be allowed when all the circumstances

including inferences that are not too remote,are not "of sufficient

force to bring minds of ordinary intelligence and sagacity to the

persuasion of [guilt] beyond a reasonable coubt."See Commonwealth

V.Latimore 378 Mass.671,676,393 N.E.2d,370 (1979).

Jackson V.Virginia 443 U.S.307,318-319(1979).

B.    The Prosecution Failed To Prove Beyond
A Reasonable Doubt That The Defendant Acted
With Malice And That The Killing Did Not
Occur In The Heat Of Sudden Combat Or
Excessive Use Of Force In Self-Defense.

Viewing the evidence in the light most favorable to

the Commonwealth at the close of the Commonwealth's evidence,the

jury could have found that;

1.Liriano was angry with Cabrera prior to arriving at
  the party[Tr. vol-4 pages 9-12,19-22].

2.At the time of the incident,Liriano ,who had comsumed
  alcohol before and during the party,was drunk,[Tr.vol-2
  pages 217,219-220;Vol-5 pages 185-186;Vol-4 pages 251;
  vol-5 pages 15-16, 50];

3.Liriano quarreled with Cabrera in the kitchen [Tr.vol-2
  pages 254,258;Vol-3 pages 14-15;vol-6 page 54].

4.Liriano called Cabrera a derogatory name in spanish and a
  fight broke out between Liriano and Cabrera in the living
  room [Tr.Vol-2 pages 228-231].

5.After the fight broke up,Cabrera walked away into the
  kitchen [Tr. Vol-2 page 235].

6.Liriano pursued him into the kitchen and they met
  at the doorway .Liriano initiated the struggle
  [Vol-3 page 23,25; Vol-5 page 30].

7.At some point,Liriano approached Cabrera at the
  refrigerator[29] [Tr.Vol-3 page 22-26].

8.Cabrera stabbed Liriano severl times.Bloodstains were
  found on the refrigerator,the floor near the refrigerator
  and the rear hallway[Tr.Vol-2 page 244;Vol-5 page 104,111-112].

---

29 Although Rivera initially testified that Cabrera had gone out
to the second living room,she subsequently recanted that testimony
and stated that Liriano had met Cabrera in the kitchen.Furthermore
blood was found only in the kitchen and the rear hallway.[Tr.Vol-2
page 260;Vol-5 page 111-112].
30 The evidence when viewed subsequent to the defendant testifyiny
presents an even stronger case for manslaughter.It further indicated
that Liriano was the aggressor,that he assaulted Cabrera with broken
glass,that Cabrera was unable to leave the kitchen before Liriano
entered it,that Cabrera's heart was beating rapidly and that he was
motivated to act in self-defense[Tr.Vol-6 pages 68-71,74,78;Vol-7
page 49-50].

9. Liriano left the apartment with others,went down the stairs
   and onto a neighbor's property[Tr.Vol-2 pages 173,245,247;Vol-4
   page 160].

10. The police found Liriano's body several hours later [Tr.Vol-4
    page 195].

11. The autopsy report indicated that Liriano had some doublt-sided
    wounds that could not have been inflicted by the knife believed
    to be the murder weapon [30][Tr.Vol-4 page 67,118,142].

     The evidence ,when viewed in the light most favorable to

the Commonwealth ,is consonant ,not with murder,but with voluntary

manslaughter.

     Malice aforethough is a required element of second

degree murder .Commonwealth V.Leate 352 Mass.452,456-457 225 N.E.

2d 921,924 (1967).Malice aforethought is defined as "any intent to

inflict injury without legal excuse or palliation....",Commonwealth

V.Colon-Cruz 408 Mass.553,547,562,N.E.2d,797 (1990),or any unexcused

intent to kill,to do grievous bodily harm,or to do an act creating

a plain and strong likelihood that death will follow.Commonwealth

V.Grey 399 Mass.469,505 N.E.2d,171 (1987).

     Although malice may be inferred from the use of deadly

weapon,this is not a mandatory presumption.See Commonwealth V.Jones,

366 Mass.805,809,323 N.E.2d,726,729 (1975).The knife in question

was nothing more than a weapon of opportunity.There is no evidence

that Cabrera brought a weapon to the scene,and indeed,Rivera testified

that the knife found outside her house belonged to her.In the facts

of this particular case,malice was not a reasnable inference from

the use of a dangerous weapon where the evidence of sudden combat

and excessive use of force in self-defense was overwhelming.

     A jury can not find malice unless the Commonwealth

proves  beyond  a  reasonable  doubt  that provocation is absent

Since malice and adequate provocation are mutually exclusive. Commonwealth V.Boucher 403 Mass.659,662 532 N.E.2d,37 39(1989): See Commonwealth V.Acevedo Supra.

Additionally ,the objective standard of whether an ordinary person would probably have been so provoked governs the determination of whether there has been adequate provocation justifying the defendant's actions. Commonwealth V.Anderson 398 Mass.838,843,501 N.E.2d,515 518(1986):Commonwealth V.Garabedian 399 Mass.304,315,503 N.E.2d,1290,1297 (1987).Viewing the evidence in the light most favorable to the Commonwealth,the provocation throughout the party,followed by the physical fight and the effort to retreat,the Commonwealth's burden to prove malice simply has not been satisfied.

Manslaughter is the unlawful killing of a person without malice .Commonwealth V.McLeod 394,Mass.727,738,477 N.E.2d,972 981 (1985).cert.denied 474 U.S.919 (1985).Voluntary manslaughter is the intentional killing of a person from a sudden transport of passion or heat of blood,upon a reasonable provocation and without malice or upon sudden combat or from the excessive use of force in self-defense ,Commonwealth V.Soars 275 Mass.291,299,175 N.E.491,493-494 (1931):Commonwealth V.Burbank 388 Mass.789,795,448 N.E.2d,735,739 1983).Because the evidence of mitigating circumstances in the present case was overwhelming,a required finding of not guilty should have been entered to so much of the charge as alleged murder(as opposed to manslaughter).Simply put,the evidence presented by the Commonwealth was insufficient to support a conviction for second degree murder.

Although mere evidence of provocation may be insufficient as a matter of law,to mandate a required finding of not guilty on

the malice issue,in the present case,there was insufficient

evidence of the absence of provation to send the issue of malice

to the jury.Cf.Commonwealth V.Andrade 422,Mass.236,237,661 N.E.

2d,1308;1310 (1996)(7 hour "cooling off"period between killing and

provocation):Commonwealth V.Young 35 Mass.App.Ct.427,435,621 N.E.

2d,1180,1185(1993)(Although victim swung a stick at one defendant,

there was evidence that both defendants had prepared earlier for

a gun assault on the victim).The use of a knife in self-defense or

sudden combat which was obtained only during the fight should not

be viewed as creating an inference of malice sufficient to automatically

defeat a motion for a required finding .Cf.Commonwealth V.Campbell

Mass.308,313,376 N.E.2d,872,876 (1978).There should be evidence in

addition to the use of a deadly weapon in order to take the matter

outside the purview of judicial review and reflection .See Common-

wealth V.Greene 372 Mass.517,519 522 362 N.E.2d,910,913 (1977).

(Conviction sustained where"the great weight of the evidence does

not tend to establish that the killing was carried out without malice

aforethought").

> Thus,to sustain the denial of a directed verdict
> it is not enough for the appellate court to find
> that there was some record evidence,however,slight,
> to support each essential elements of the offense;
> it must find that there was enoght evidence that
> could have satisfied a rational trier of fact of
> each such element beyond a reasonable doubt.

Commonwealth V.Latimore 378 Mass.at 677-8,393 N.E.2d,at 374-5.

Jackson V.Virginia 443 U.S.307,318-319 (1979)..

The evidence presented by the Commonwealth clearly pointed

to fact that Liriano was the aggressor.He had arrived at the party

angry at a debt that he believed Cabrera owed him.[31]He called Cabrera

an obscene name.He pursued Cabrera into the kitchen after Cabrera

had left the fight in the living room.

(22)

The fatal wounds are to the front of Liriano,which are consistent with an assault by Liriano,rather than attempt to avoid Cabrera. At least one of the purprted"defensive"wounds was caused by a doublt edged instrument.This was inconsistent with the kitchen knife,alleged to be the murder weapon,but would be consistant with rolling over glass shards in the living room fight. As such,it could hardly be a "Defensive"wound with regard to the kitchen fight. [Tr.Vol-4 page 67,118,142].

There was no evidence of prior bad feeling on the part of Cabrera against Liriano. There was no evidence that Cabrera had formed an intent to attack Liriano.Indeed,the purported weapon was a knife belonging to the proprietor and not one carried to the scene by Cabrera. There was simply no evidence of a"conscious and fixed purpose to kill continuing for a length of time."Commonwealth V. Lamrini,392 Mass.427 542,467 N.E.2d,95,98 (1983).The injuries inflicted upon Liriano were consistent with a quick fight that was motivated by fear and adrenaline.

The Commonwealth's case did deteriorate subsequent to the Commonwealth resting. Cf.Commonwealth V.Campbell 375 Mass.at 311, 376 N.E.2d,at 875. The defendant took the witness stand and introduced significant evidence of self-defense and sudden combat. Although the jury was not required to believe this information,Commonwealth V.McInerney 373 Mass.136,145,365 N.E.2d,815,821 (1977),It thrust the burden on the Commonwealth to rebut this evidence.Commonwealth V.Acevedo,Supra.

---

31 The prosecution's witnesses testified that Liriano believed that he was owed money by Cabrera and was angry[Tr.Vol-4 pages 9-12, 19-22,222-223;Vol-5 pages 21,144-145].

(23)

The evidence clearly indicates that the killing was not one which occurred as a result of any plan or purpose,but which occurred by chance and under circumstances of sudden combat.Malice is negated and at most,the conduct constituted voluntary manslaughter not murder .Commonwealth V.Peter 372 Mass.319,324,361 N.E.2d,1277 1280 (1977).

This is not the situation where"the evidence,properly viewed in the light most favorable to the Commonwealth,permitted the jury to conclude that he ...killed the victim in circumstances not justifying self-defense ."Cf.Commonwealth V.Beauchamp 49 Mass.App.Ct.591,609 732 N.E.2d,311,327,(2000).The totality of the circumstances dictated that Liriano's death was the result of sudden combat and/or the excessive use of force in self-defense.

The defendant's argument is not directed towards the weight and credibility of the evidence presented but rather,to the fact that the mitigating circumstances defeat the existence of Malice. Additionally,this is not the case in which evidence of the mitigating circumstances arising out of the Defendant's "Self-serving"statement. See Commonwealth V.McInerney 373 Mass.at 146,365 N.E.2d,at 821; Commonwealth V.Maillet 400 Mass.572,580 511 N.E.2d,529,534 (1987) (No reversal where only evidence of victim's aggression came from defendant).Instead, the evidence of mitigating circumstances comes from events observed by the prosecution's witnesses and is an integral part of the prosecution's case.

The prosecution did not overcome its burden of proof by demonstrating the existence of Malice. The conviction of murder is not consoant with justice.

Therefore,Cabrera's Motion for a required finding of not

(24)

guilty to at least as much of the indictment as alleged murder

should have been granted.Cabrera's conviction of murder violates

his rights pursuant to the Fifth and Fourteenth Amendment to the

Constitution of the United States and Article XII of the Massachusetts

Declaration of rights.

III                    **DEFENSE COUNSEL PROVIDED INEFFECTIVE
                       ASSISTANCE OF COUNSEL:**

> **A. The Standard Of Review For Ineffective
> Assistance Of Counsel;**

Trial counsel's performance is constitutionally ineffective

when it falls"measurably below that which might be expected from

an ordinary fallible lawyer"and likely deprive[s]the defendant of

an otherwise available ,substantial grounds of defense[sic]."

Commonwealth V.Saferian 366 Mass.89,96,315 N.E.2d, 878,883(1974).

In Commonwealth V.Amirault 424 Mass.618 n.24 677 N.E.2d,652,(1997),

the Supreme Judicial COurt analogized ineffective assistance of

counsel to a substantial risk of a miscarriage of justice and

acknowledged that"[I]t is possible that [the court is]somewhat readier

to find ineffective assistance of counsel,at least before the regular

processes of appeal have run their course,than has been the Federal

Practice under Strickland V.Washington 466 U.S.668 (1984).

In the instant case,defense counsel's "multiple missteps

failures ,and ommissions fell outside the'wide range of reasonable

professional assistance'guaranteed by the Sixth Amendment"and Article

XII of the Massachusetts Declaration of Rights.United STtates V.

Correia No.00-10246-RWZ,2002 U.S.District Lexis 17218 at *3(D.Mass.

September 13/2002)(Quoting Strickland V.Washinton 466 U.S.at 689

(25)

See also Commonwealth V.Saferian 366 Mass.at 96,315 N.E.2d, at
883.The individual failings as well as the cumulative weight of the
flaws in defense counsel's representation irreparably prejudiced
the defendant.See Pavel V.Hollins 261 F.3d,210,225-226(2d cir 2001).
In cases such as the one sub judice,"the defense was so botched
that judgments on[whether better work might have accomplished some-
thing material for the defense are] without value."Commonwealth V.
Satterfield 373 Mass.109,115,364 N.E.2d,1260,1264(1977).

> **B**    **Defense Counsel Demonstrated Serious**
> **Incompetency,Inefficency,Or Inattent-**
> **ion Of Counsel Which Fell Measurably**
> **Below That Which Might Be Expected**
> **From An Ordinary Fallible Lawyer;**
>
> > **1.    Defense Counsel Failed To Object**
> > **To The Consciousness Of Guilt**
> > **Instruction Which Permitted**
> > **Evidence To Be Used To Find Malice**

The trial judge instructed the jury that evidence"regarding
the flight of the defendant from the area of Lynn down to New York
or Connecticut  and also the use of aliases"could be treated as
"one of the factors tending to prove the guilt of the defendant."
[Tr.Vol-7 pages-148-149].He told the jury twice more that they
could consider such evidence as a factor tending to prove guilt.
[Tr. Vol.-7 pages-149-150]. Although consciousness of guilt might
be relevant as to whether an unlawful killing was committed,it "is
not evidence of malice aforethought" Commonwealth V.Niland 45 Mass.
App.Ct.525,529,699 N.E.2d,1236,1239 (1998):Commonwealth V.Riley
433 Mass.266 273,741 N.E.2d,821,824 (2001).Counsel failed to object
to this instruction. The jury could have been persuaded by this
additional evidence of guilt to find that the Commonwealth had met
its burden in proving malice. In a case such as this,where there

(26)

was a substantial amount of evidence negating malice,this instruction created a substantial risk of a miscarriage of justice.

2. **Defense Counsel Failed To Object To A Supplemental Instruction On Malice,Thus,Shifting The Burden Of Proof Onto The Defense.**

As discussed infra ,the supplemental instruction on malice [Tr.Vol-8 page 14].shifted the burden from the Commonwealth to the defense to disprove the absence of mitigating factors. Connolly V.Commonwealth 377,Mass.527,533-534,387 N.E.2d 519 (1979). Defense counsel's failure to object to this instruction in a case in which there was substantial evidence of mitigating factors resulted in a substantial risk of miscarriage of justice.Trial counsel's performance is constitutionally ineffective when it falls "measurably below that which might be expected from an ordinary fallible lawyer, substantial grounds of defense[sic].".Commonwealth V.Saferian 366 Mass.89,96,315 N.E.2d,878 883 (1974):In Commonwealth V.Amirault 424 Mass.618 n.24,677 N.E.2d,652 (1997),the Supreme Judicial Court analogized ineffective assistance of counsel to a substantial risk of a miscarriage of justice and acknowledged that"[I]t is possible that[the court is]somewhat readier to find ineffective assistance of counsel,at least before the regular processes of appeal have run their course,it is clear based on the above grounds in III (1)and (2) the petitioner as defendant demonstrated prejudice to the standard of the Federal practice under Strickland V.Washington 466 U.S.668(1984). Violation of the Sixth and Fourteenth Amendment.

## CONCLUSIONS

For the above said reasons,this court should grant the petitioner petition for Writ of Habeas Corpus amended as order on September 20/2006,See EXH-A 28 U.S.C.A.2254 ,and further vacate

(27)

his life sentence and remand this case back to superior court for a New Trial, in accordance with this holding. Alternatively, this court should grant any other relief that is appropriate.

DATE october 6 /2006

RESPECTFULLY SUBMITTED
PRO-SE _Jose L Cabrera C_____
MR. JOSE LUIS CABRERA
N.C.C.I. GARDNER
P.O. BOX 466
500 COLONY RD.
GARDNER MASS. 01440

### VERIFICATION

I Jose Luis Cabrera declare under the pains and penalties of perjury that I have read the foregoing amended petition and that the facts stated therein are true to the best of my knowledge, information and belief.

Subscribed in Worcester County Massachusetts , this __6__ day of October 2006:

PRO-SE _Jose L Cabrera C._
MR. JOSE LUIS CABRERA
N.C.C.I. GARDNER
P.O. BOX 466
500 COLONY RD.
GARDNER MASS. 01440

(28)

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS


## CLERK'S NOTICE


This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.